# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Information associated with one email account that is stored at premises owned, maintained, controlled or operated by Google, Inc.

Case No. **18-M-162 (DEJ)**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

See Attachment A

located in the Eastern District of Wisconsin, there is now concealed:

See Attachment A

The basis for the search under Fed. R. Crim P. 41(c) is:
- ☒ evidence of a crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of: International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, the Iranian Transactions Regulations (31 C.F.R. Part 560), and Title 18, United States Code, Section 371

The application is based on these facts: See attached affidavit.

☒ Delayed notice of _____ days (give exact ending date if more than 30 days: 4/12/19 ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Michael D. Brusacoram, FBI
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: Aug. 31, 2018

*Judge's signature*

City and State: Milwaukee, Wisconsin

Honorable David E. Jones, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR A SEARCH WARRANT

I, Michael D. Brusacoram, Special Agent of the Federal Bureau of Investigation (FBI), Milwaukee, Wisconsin, being duly sworn, do depose and state:

### I. INTRODUCTION AND SUMMARY OF PROBABLE CAUSE

1. I make this affidavit in support of an application for a search warrant under U.S.C. §2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Google, Inc., to disclose to the government records and other information in its possession pertaining to the subscriber or customer associated with the email address t.kocyigit1948@gmail.com ("**The Subject Account**"), including the contents of communications.

2. As set forth in detail below, based upon my ongoing investigation, I have probable cause to believe that from 2014 onward, the Turkey-based Ramor Corporation (RAMOR) facilitated the design and manufacture of a prototype missile attack boat, known as the RMS-16/RM-16[1], which was assembled at Qeshm Madkandalou Shipbuilding Cooperative in Iran (MADKANDALOU) on behalf of the Islamic Revolutionary Guard Corps-Navy (IRGC-N). Based on reviewing the results from two previous court-authorized search warrants for vosoughi.rohollah@gmail.com and for almasi.reza@gmail.com, I have probable cause to believe that (1) RAMOR was engaged as a front company for MADKANDALOU, procuring maritime materials and components including Arneson Surface Drives, known as ASD-14, from Wisconsin-based manufacturer Twin Disc, for use on the RMS-16; (2) Arneson Surface Drives were pursued and/or considered by MADKANDALOU for other military boat platforms; and (3) Turkish boat designer Tuna Kocyigit (KOCYIGIT) took over responsibilities for the RMS-16 and RMS-13[2] missile attack boat projects in 2016 after MADKANDALOU appears to have terminated any business arrangements with Kutsal Denizmen (DENIZMEN), the previous boat designer.

1

---

[1] The RMS-16/RM-16 is a prototype missile attack boat developed by Iran, which utilizes ASD-14 surface drives.
[2] The RMS-13 is a prototype missile attack boat developed by Iran.

3. I know that in January 2017 RAMOR was placed on the U.S. Department of Commerce's Entity List and in July 2017 was similarly listed by the U.S. Department of Treasury/Office of Foreign Assets Control (OFAC) for "engaging in support of illicit Iranian actors." These listings restrict and/or preclude the ability of RAMOR to conduct business with United States entities. On June 27, 2017, an Indictment was returned charging RAMOR and Resit Tavan (TAVAN), president of RAMOR, with several federal felony violations including conspiracy, smuggling, and violating the International Economic Emergency Powers Act based on the illegal acquisition and export of U.S.-origin equipment for the RMS-16 project. In June 2017 TAVAN was arrested in Romania and was later extradited to the U.S. in December 2017. Currently, TAVAN is awaiting trial on the Indictment in the Eastern District of Wisconsin.

4. Based on a review of email communications obtained from a search of the two accounts noted above, I have learned that KOCYIGIT, utilizing **The Subject Account,** maintained contact with Reza Almasi (ALMASI), Production Manager at MADKANDALOU, Rohollah Vosoughi (VOSOUGHI), Commercial Manager at MADKANDALOU, and TAVAN. In approximately March 2018, Twin Disc learned that a Turkey-based company named Piro Deniz Motorlari (PDM) was attempting to purchase three sets of ASD-14 surface drives through a U.S. company. Documents provided by Twin Disc indicate PDM ordered the drives at the request of KOCYIGIT.

5. Based upon the facts uncovered by my investigation, I have probable cause to believe that evidence currently exists on the computer systems of Google, Inc., and within **The Subject Account,** concerning a conspiracy to illegally acquire and export U.S. origin goods from the United States to Iran, in violation of the International Emergency Economic Powers Act (IEEPA), 50 U.S.C. §§ 1701-1706, the Iranian Transactions and Sanctions Regulations (31 C.F.R. Part 560), and Title 18, United States Code, Section 371 (conspiracy), including evidence related to the ultimate disposition of those U.S. goods by end users.

## II. AGENT BACKGROUND

6. I have been a Special Agent of the FBI for more than ten (10) years, currently assigned to investigate foreign counterintelligence matters, including criminal violations of export control laws, commonly known as counter-proliferation.

7. This affidavit is based on my personal knowledge, my review of records and other materials obtained during the course of this investigation, including interview reports, as well as information provided to me by other government personnel with knowledge related to this investigation, with both the FBI and the Department of Commerce, who are working jointly on this investigation. I believe the information received from others to be truthful and reliable to the best of my knowledge. Where I have reported statements made by others, or from documents that I have reviewed, those statements are reported in substance and in part, unless otherwise indicated. Because this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause for issuance of the search warrant.

## III. STATUTORY BACKGROUND OF VIOLATIONS

8. Pursuant to authority granted under the IEEPA, the President of the United States has issued orders and regulations governing and prohibiting certain transactions with Iran by United States persons or involving United States goods. The IEEPA, at 50 U.S.C. § 1705, provides in pertinent part as follows:

(a) Unlawful Acts. It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter.

(c) Criminal penalty. A person who willfully commits, willfully attempts to commit, or willfully conspires to commit, or aids or abets in the commission of, an unlawful act

3

described in subsection (a) of this section shall, upon conviction, be fined not more than $1,000,000, or if a natural person, may be imprisoned for not more than 20 years, or both.

9.  Pursuant to an Executive Order 12959 issued by the President in 1995, the Secretary of the U.S. Department of Treasury, in consultation with the Secretary of State, has promulgated the Iranian Transactions Regulations (ITR), codified in part at 31 C.F.R. §560.203 & 204, which generally prohibit any person from exporting or causing to be exported from the United States to Iran any good or technology without having first obtained an export license from the U.S. Department of Treasury, Office of Foreign Assets Control (OFAC). Effective on October 22, 2012, pursuant to Executive Order 13599, the ITR were replaced by the Iranian Transactions and Sanctions Regulations (ITSR), which did not change the substantive provisions of 31 C.F.R. §560.

10. The ITSR impose, among others, the following prohibitions set forth in 31 C.F.R. § 560.204:

Except as otherwise authorized [by a license issued by the OFAC], the exportation, reexportation, sale, or supply, directly or indirectly, from the United States, or by a United States person, wherever located, of any goods, technology, or services to Iran or the Government of Iran is prohibited.

11. Title 18, United States Code, Section 371, prohibits two or more persons conspiring to commit an offence against the United States.

### IV. FACTS ESTABLISHING PROBABLE CAUSE

12. Previous court-authorized search warrants were served on Google, Inc., for vosoughi.rohollah@gmail.com (July 2014 and December 2015), an email account utilized by VOSOUGHI, and for almasi.reza@gmail.com (May 2017), an email account utilized by ALMASI. Detailed below are relevant emails located in those accounts:

- An email titled "RE: GA Drawing" dated 07/14/2014 from ALMASI to DENIZMEN and VOSOUGHI asking if the RMS-16 has the minimum clearance for the "Nasr type"[3] missile. Attached to the email is a digital drawing of the RMS-16, including what appear to be covert missile launching tubes.

- An email titled "resin invoice (rms-16)" dated 12/20/2014 from VOSOUGHI to ALMASI having no text but an attachment labeled "resin (rms-16) proforma." The attachment includes an invoice, dated 12/02/2014, for resin and hardener for delivery to RAMOR. The "customer contact" on the invoice is "M. Tuna Kocyigit."

- An email titled "RMS 16 Production Facility" dated 01/01/2015 from KOCYIGIT (utilizing tuna@fibertech.com.tr) to DENIZMEN inquiring about the facility. Later on 01/01/2015, ALMASI responds to DENIZMEN, VOSOUGHI, TAVAN, KOCYIGIT, and others answering KOCYIGIT's questions.

- An email titled "RMS Project" dated 01/31/2015 from KOCYIGIT (utilizing tuna@fibertech.com.tr) to ALMASI and Omran Salami (SALAMI), Planning Manager at MADKANDALOU, listing the work schedule on the RMS-16 Project.

- An email titled "Pasaport Scan" dated 02/26/2015 from KOCYIGIT (utilizing tuna@fibertech.com.tr) to ALMASI and DENIZMEN. The attached passport image contains KOCYIGIT's identifiers, including his name (Tuna Kocyigit), date of birth, and citizenship (Turkey).

- An email titled "RMS 16 BOFOR Deck Equipment" dated 03/14/2015 from DENIZMEN to VOSOUGHI, TAVAN, KOCYIGIT (utilizing tuna@fibertech.com.tr), ALMASI, and others discussing doors and latches.

---

[3] The Nasr is a domestically manufactured Iranian short-range anti-ship missile capable of evading radar.

- An email titled "RMS-16 Deck & Superstructure Actual Weights" dated 03/22/2015 from DENIZMEN to ALMASI, SALAMI, KOCYIGIT (utilizing tuna@fibertech.com.tr), and others.

- An email titled "my gmail address" dated 04/14/2015 from KOCYIGIT (utilizing **The Subject Account**) to ALMASI having no text or attachments.

- An email titled "FW: RMS16m – Structure Analysis Quote – RE: RMS-16 DNV Class Notation" dated 04/21/2015 from KOCYIGIT (utilizing tuna@fibertech.com.tr) to ALMASI stating "again in the attached you will find the quote received from France regarding the structural analysis of the RMS16 boat that we couldn't realised [sp]." The original email, forwarded as part of this email, is dated 11/24/2014. The attached quote is titled "RMS 16 Fully Structural Analysis," "TO: Tuna Kocyigit – Fiber Tech – tuna@fibertech.com.tr" for "Project: Fiber-tech will build a new composite 16 m military power boat. The boat will be very high speed: 70 knots, and for this reason will required [sp] specific structural analysis." After forwarding the 11/24/2014 email, it appears from the email search warrant returns that KOCYIGIT has utilized **The Subject Account** he provided ALMASI on 04/14/2015 to conduct further business. Business records indicate KOCYIGIT was a manager at Fiber-Tech, which is now "out of business."

- An email titled "RMS 16 Project" dated 04/29/2015 from KOCYIGIT (utilizing **The Subject Account**) to ALMASI stating issues with the construction of the RMS-16.

- An email titled "RMS 16 project paint offer" dated 04/30/2015 from KOCYIGIT (utilizing **The Subject Account**) to ALMASI providing an estimate for paint work on the RMS-16.

- An email titled "personal" dated 07/19/2015 from KOCYIGIT (utilizing **The Subject Account**) to ALMASI stated, "I regret to inform you that my employment contract with Seden[4] has been terminated today due to the unavailability of finance as my salary has not been paid since last month. Although I'm aware that its typical Kutsal's [DENIZMEN] behavior but I'm not willing to bring the matter to legal platforms as the project concerned is related with the yard at the end. I kindly ask you to interfer for the settlement of the outstanding amount otherwise it will again be ignored by Kutsal."

- A forwarded email titled "Tuna Kocyigit" dated 07/23/2015 from ALMASI to SALAMI, VOSOUGHI, and TAVAN drafted by DENIZMEN stating, "Mr. Tuna Kocyigit has now resigned his duties and has no connection what so ever with our company."

- An email titled "Re: Contracts" dated 08/03/2016 from DENIZMEN to SALAMI, ALMASI, and VOSOUGHI discussing contract issues with the RMS-16, RMS-13, and RMS-12. On 08/03/2016 DENIZMEN cancels his non-disclosure agreement with RAMOR and MADKANDALOU signed 12/10/2013. On 09/28/2016, DENIZMEN emails ALMASI, OGUZTURK, VOSOUGHI, and SALAMI requesting an update on the RMS-16, RMS-13, and RMS-12 projects saying he has received no feedback in two months and would like to clear the outstanding accounts. According to search warrant results, DENIZMEN had no further contact with ALMASI after 10/20/2016. Subsequent references to the boats are to the RM16 and RM13. It is believed "RMS" was an acronym for Ramor-Madkandalou-Seden[4]. With DENIZMEN/Seden removed from the projects, the acronym was changed to RM.

- An email titled "RM16 G.A." dated 04/20/2017 from a marine company to KOCYIGIT (utilizing **The Subject Account**), ALMASI, VOSOUGHI, and TAVAN providing a

digital drawing of the RM16. The attached drawing was password protected and could not be opened.

13. In or about March 2018, Twin Disc received information from a U.S. company that Piro Deniz Motorlari (PDM), located in Turkey, was attempting to purchase three sets of ASD-14 surface drives through a Florida-based marine company. The stated purpose of the drives was for a 19 meter passenger vessel but, upon looking at the configuration, Twin Disc believes the drives are for some type of patrol boat. PDM requested the ASD-14 surface drives on behalf of "Tuna Kocyigit," who provided the propulsion system order list to PDM via the following text message:

> tuna kocyigit
> alıcı: ben
> 11 Şub Ayrıntıları göster
>
> 19M HSC Propulsion System Order List :
>
> Arneson ASD14 Drive Unit..........................
> ...........................3 Sets
>
> Optional Long Fin..........................
> ...........................2 Units
>
> Mechanical Tie-Bar Assembly for Triple
> Installation..............1 Set
>
> Power Steering Kit for the above (single
> station)....................1 Set
>
> Electronic Trim and Steering
> Indicators.................................3 Sets
>
> Propellers (to be specified).....................
> ...........................3 Units
>
> Cardan Shaft (length to be specified)....................
> ..............3 Sets    1x90cm   2x190 cm

14. The Florida company referred the order to a California-based company as the request "sounds too complicated".

15. I recently interviewed the owner of the California-based company, who verified he received a request for quote in December 2017 for three sets of ASD-14s from a Turkish national believed to be residing in Florida. The Turkish national stated in email correspondence that the buyer was PDM and the "drives will be shipped to Turkey." In April 2018, the Turkish national again contacted the California-based company and requested a quote for propellers for the ASD-14s. PDM was cc'ed on the email.

16. Twin Disc has told me that ordering the ASD-14s through this California company would be unnecessarily circuitous and expensive because the California company would have to purchase the drives through Twin Disc's Wisconsin-based distributor. A legitimate order intended for use in Turkey should go directly through Twin Disc's Turkey-based distributor. Twin Disc also reported that it has no record of any previous sales to PDM by any authorized Twin Disc distributor.

17. As confirmed by Twin Disc, "ASD-14" is a specific model manufactured exclusively by Twin Disc in Racine, Wisconsin. The term "ASD-14" is used only by Twin Disc for their product. No other surface drive manufacturers use the term "ASD-14" to describe their product(s). To purchase an ASD-14, a person/entity goes through a Twin Disc distributor who then places an order with Twin Disc to manufacture the surface drive. Distributors do not warehouse/stock ASD-14s – they are produced per order by Twin Disc.

18. Based on what I know regarding the export of U.S. goods and the timelines related to the production and use of products like surface drives, it is likely that orders bound for Iran for use on military boat platforms are pending or in process. KOCYIGIT's involvement with the RMS-16 project,

and MADKANDALOU's loss of RAMOR as a procurement agent, make it likely he is attempting to procure additional ASD-14 surface drives in furtherance of Iranian military boat production.

## V. CONCLUSION

19. In summary, this investigation has revealed the following in relation to KOCYIGIT and his use of **The Subject Account**:

- The RMS-16 missile attack boat is equipped with Twin Disc ASD-14 surface drives. The initial drives for the prototype vessel were procured by RAMOR.
- KOCYIGIT was involved in the development of the RMS-16, and other military boat platforms, utilizing **The Subject Account** to contact MADKANDALOU/RAMOR.
- MADKANDALOU is an Iranian maritime company based in Qeshm Island, Iran, that is involved in the procurement of materials utilized in military vessels, including the RMS-16 missile attack boat.
- RAMOR is presently listed by both the U.S. Department of Commerce and the U.S. Department of the Treasury for illicit activities. The president of RAMOR is currently pending trial in the Eastern District of Wisconsin for export-related violations.
- KOCYIGIT contacted PDM, a Turkey-based company, to order three sets of ASD-14 surface drives. The manner in which this order was placed is circuitous, expensive, and unusual according to Twin Disc.
- The purported use of the ASD-14 surface drives for this order was for a passenger vessel. However, experts in the maritime industry believe the configuration is a patrol boat application.
- A legitimate order of ASD-14s would be made through Twin Disc's authorized distributor in Turkey. Making the order through PDM, a company with no history of

purchasing Arneson Surface Drives, adds both significantly more expense and time to the processing of the order.

- Twin Disc is the sole manufacturer of ASD-14s and all ASD-14s are produced in Racine, Wisconsin.
- ASD-14 is a specific name/model associated exclusively with Twin Disc's surface drives and not utilized by any other surface drive manufacturer.

20. Based on the aforementioned facts, I respectfully submit that there exists probable cause to believe that KOCYIGIT has conspired with ALMASI, VOSOUGHI, MADKANDALOU, and others to unlawfully acquire U.S. origin goods and technology for shipment to and use by Iran, in violation of the IEEPA, 50 U.S.C. § 1705, the Iranian Transactions Regulations, 31 C.F.R. § 560.204, and 18 U.S.C. § 371, and that evidence of those crimes will be found in **The Subject Account**.

# ATTACHMENT A

1. To the extent that the information described below is within its possession, custody, or control, Google, Inc., is required to disclose the following information to the government for each account or identifier listed in 2 below:

   a. The contents of all emails and chat logs stored in the account, including copies of emails or chats sent or received from the account, draft emails, the source and destination addresses associated with each email, date and time the email was sent, the size and length of each email, the IP addresses associated with each email, and attachments to emails sent or received from the account;

   b. All records or other information regarding the identifications of the account, to include full name, physical address, telephone numbers and other identifiers, records of session times and durations, the date on which the account was created, the length of service, the types of service utilized, the IP address used to register the account, log-in IP addresses associated with session times and dates, account status, alternative email addresses provided during registration, methods of connecting, log files, and means and source of payment (including any credit or bank account number);

   c. All records or other information stored by an individual using the account, including address books, contact and buddy lists, pictures, and files;

   d. All records pertaining to communications between Google Inc., and any person regarding the account, including contacts with support services and records of actions taken.

2. Google, Inc. shall disclose the above-described information for the following account or identifier:

   **t.kocyigit1948@gmail.com**